IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01276-RM-NRN

JOSEPH ANTHONY CRUZ,

Plaintiff,

v.

DETECTIVES MARQUEZ AND MCKENZIE,
A.C.D.F. INSTITUTION,
SUPERVISORS OF BOTH DETECTIVES,
MENTAL HEALTH SERVICES EMPLOYED BY A.C.D.F.,
MENTAL HEALTH SUPERVISORS AND EMPLOYEES,

Defendants.

---

**REPORT AND RECOMMENDATION ON
ADAMS COUNTY DEFENDANTS' MOTION TO DISMISS PUSRUANT TO
FED. R. CIV. P. 12(b)(6)
(Dkt. #38)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

        This matter is before the Court on the Adams County Defendants'

("Defendants")[1] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion to

Dismiss") (Dkt. #38), referred by Judge Raymond P. Moore. (*See* Dkt. #39.) Plaintiff

Joseph Anthony Cruz ("Mr. Cruz" or "Plaintiff") responded (Dkt. #40), and Defendants

replied. (Dkt. #41.) The Court heard oral argument on April 7, 2022. (Dkt. #46.) Now

---

        [1] The Adams County Defendants include Detective James McKenzie, Detective
Matthew Marquez, and the Adams County Detention Facility ("ACDF"). To the extent
Mr. Cruz intended to sue some third-party mental health provider at ACDF, he has failed
to adequately name or serve them and they should be dismissed. (*See* Dkt. #28-1.)

being fully informed and for the reasons discussed below, it is hereby **RECOMMENDED**
that Defendants' Motion to Dismiss (Dkt. #38) be **GRANTED.**

### BACKGROUND[2]

This is a 42 U.S.C. § 1983 civil rights lawsuit arising from Mr. Cruz's detention at
the ACDF. Beginning in or around June 2021, Mr. Cruz became concerned he was
sleepwalking and being sexually assaulted during his sleepwalking episodes. He
explains that he had no evidence of sexual assault other than his "spirit hurting," his
"anus felt different," and he was feeling suicidal. (Dkt. #20 at 5.) He was taken for a
mental health visit after reporting his fears and the providers performed a "light suicide
evaluation." (*Id.*) While under medical evaluation, Mr. Cruz was placed in a three-man
cell, "even though he expressed his fear of sleepwalking." (*Id.*) It appears that no
assault occurred in this three-man cell. (*See generally id.*)

Later that month, Mr. Cruz was returned to general population with three new
roommates. (*Id.*) He claims that he again had to move pods because two of his
roommates sexually assaulted him, a conclusion he came to because "they would call
him names like 'fag.' Amongst [*sic*] other names." (*Id.*) Mr. Cruz moved to a new pod,
which was located next to his previous one.

Mr. Cruz reported the sexual assault(s) to Detective James McKenzie. Mr. Cruz
told Detective McKenzie that he feared he had been assaulted due to his "deductive
reasonings": he had been called a homophobic slur, "his anus felt and smelled

---

[2] The following allegations are taken from Plaintiff's operative complaint (Dkt.
#20) and all non-conclusory allegations are presumed true for the purposes of the
motions to dismiss. All citations to docketed materials are to the page number in the
CM/ECF header, which sometimes differs from a document's internal pagination.

different," and his "crotch area smelled like piss." (*Id.* at 6.)  Mr. Cruz alleges that Detective McKenzie failed to adequately investigate the sexual assault because he did not collect any DNA evidence from Mr. Cruz's cell and did not order a sexual assault nurse examiner ("SANE") exam. Mr. Cruz requested that he be administratively segregated but Detective McKenzie denied that request.

Mr. Cruz was then placed in the mental health unit for treatment of "suicidal tendencies" and "light observation." (*Id.* at 7.) He claims that the mental health unit did not treat him properly and failed to diagnose his sleepwalking issues. Against his wishes, he was placed in a four-person observation cell. Again, it appears that no assault took place while Mr. Cruz was in the observation cell. (*See generally id.*)

Mr. Cruz was returned to the general prison population despite his fears of sexual assault, and eventually housed with an inmate named Andrew Baca. Mr. Cruz claims that this housing arrangement violated an ACDF policy, but he does not explain how. While rooming with Mr. Baca, Mr. Cruz discovered a feces stain in his pants and concluded he had been sexually assaulted. Mr. Cruz reported to Detective Matthew Marquez that he been "raped again, in [his] sleep" because had a "mark on his pants that looked and smelled like feces." (*Id.* at 7–8). Additionally, according to Mr. Cruz, Mr. Baca at some point stated: "I raped you while you slept" and "theres [sic] a stain on your pants." (*Id.* at 8.)[3] Mr. Cruz requested to be segregated from general population and his request was denied.

---

[3] In his response (Dkt. #40), Mr. Cruz for the first time alleges that he remembers this assault. Ultimately, for the reasons explained below, it is irrelevant whether Mr. Cruz actually remembers Mr. Baca sexually assaulting him.

Detective Marquez was notified of Mr. Cruz's claims against Mr. Baca, and he ordered a SANE exam. (*Id.* at 9.) Detective Marquez made a report, but Mr. Cruz alleges that Detective Marquez failed to adequately investigate the assault because he did not collect clothes or sheets from Mr. Cruz's cell. (*Id.*) Mr. Cruz explains that he was then placed in the mental health unit with roommates, instead of alone in administrative segregation. Mr. Cruz claims that the mental health services again failed to diagnose his sleepwalking behavior. There are no allegations that he was sexually assaulted while housed in the mental health unit.

After two weeks in the mental health unit, Mr. Cruz again returned to general population and was housed with David Wilder, whom Mr. Cruz had "known for years." (*Id.* at 9.) Mr. Cruz alleges that, sometime in August 2021, Mr. Wilder raped Mr. Cruz while Mr. Cruz was sleeping or sleepwalking. He reported being suicidal and was placed in the mental health unit, where he notified a staff member that he had been sexually assaulted. He was immediately taken for another SANE exam. He also met with Detective Marquez about this third incident of sexual assault.

Mr. Cruz claims that none of the incidents of sexual assault were properly investigated and that he has not received therapy. Because he continues to be victimized, he is "going through ongoing debilitating mental health trauma." (*Id.* at 10.) He claims that, as a result of the sexual assaults, he now hears voices and is taking "severe psycotropic [sic] medication."[4]

---

[4] In a somewhat bizarre turn of events, when asked about his current mental status during oral argument, Mr. Cruz stated that he had lied about being psychotic so that he could receive psychotic medication and be transferred to a hospital prison, which allows him to be housed separately.

Based on the foregoing allegations, Mr. Cruz alleges that Defendants have violated his Eighth Amendment. He seeks monetary damages of over $10,000,000 as well as an injunction requiring that the jail provide overnight camera observation to diagnose his sleepwalking condition and mental health counseling.

Defendants move to dismiss on several grounds. First, they argue that the Eighth Amended does not require prison officials to investigate allegations of unconscious sexual assault or compel them to permanently segregate an individual from the general population of inmates. Thus, they argue, Detectives McKenzie and Marquez (together, the "Detectives") are entitled to qualified immunity. Defendants also moved to dismiss the claims against ACDF because it is not a legal entity subject to suit and Mr. Cruz has failed to plead a *Monell* claim against the appropriate entity (the Adams County Sheriff in his official capacity). Finally, Defendants argue that, to the extent Mr. Cruz asserts a state law tort claim, he has failed to state a claim.

## LEGAL STANDARDS

### I.  Pro Se Plaintiff

Mr. Cruz is proceeding pro se. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal.*

*State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II. Failure to State a Claim Upon Which Relief Can be Granted

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled allegations as true, purely conclusory statements are not entitled to this presumption. *Id.* at 678, 681. Therefore, so long as the plaintiff pleads sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," he has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.

## III. Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant asserts

the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). To determine resolve a government official's qualified immunity claims, a court must "The plaintiff must "decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. A reviewing court has discretion to address either prong first. *Id.* at 236.

Raising a qualified immunity defense in a motion to dismiss "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Sayed v. Virginia*, 744 F. App'x 542, 545-46 (10th Cir. 2018) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Id.* at 546 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). Accordingly, to survive a motion to dismiss, a plaintiff "need 'only allege enough factual matter' to state a claim that is 'plausible on its face and provide fair notice to a defendant.'" *Id.* (quoting *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)).

## ANALYSIS

### I. Mr. Cruz Fails to State an Eighth Amendment Claim

#### a. Failure to Investigate

Mr. Cruz's chief complaint appears to be that the Detectives did not adequately investigate his allegations of sexual assault. These allegations, even accepted as true, do not state an Eighth Amendment claim.

While prison officials have a duty to protect inmates from assault (sexual or otherwise), *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), there is no constitutional requirement for them to investigate in a manner satisfactory to the plaintiff. *See Woodstock v. Golder*, No. 10-CV-00348-ZLW-KLM, 2011 WL 1060566, at *8 (D. Colo. Feb. 7, 2011) (citing *Moore v. Honeycutt*, No. 09–3067–SAC, 2009 WL 1033760, at *2 (D. Kan Apr. 17, 2009)), (holding that "[Defendant]'s failure to investigate Plaintiff's [allegations of sexual assault] to an extent sufficient to satisfy Plaintiff is not a constitutional violation"), *report and recommendation adopted*, No. 10-CV-00348-ZLW-KLM, 2011 WL 1044236 (D. Colo. Mar. 23, 2011); *Moore*, 2009 WL 1033760, at *2 (stating that "dissatisfaction with [defendant's] investigation" of reported rape by a fellow inmate does not state an Eighth Amendment violation).

Mr. Cruz also alleges that the Detectives failed to follow ACDF policies after he reported his sexual assaults. However, prison regulations are "primarily designed to guide correctional officials in the administration of a prison," they are "not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995); *see also Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010). Thus, any failure to investigate Mr. Cruz's complaints pursuant to policy does not establish that a constitutional violation occurred. *See Malik v. Kindt*, 76 F.3d 393, 1996 WL 41828, at *2 (10th Cir. Feb. 2, 1996) ("a failure to adhere to administrative regulations does not equate to a constitutional violation"); *Frazier v. Zavaras*, No. 10-cv-02534-CMA-KMT, 2011 WL 4537001, at *5 (D. Colo. Sept. 30, 2011).

**b. Deliberate Indifference - Failure to Protect**

The Court liberally construes Mr. Cruz's complaint to allege an Eighth Amendment violation for failure to protect. This violation of the Eighth Amendment occurs when a prison official is deliberately indifferent to a substantial risk of serious harm to an inmate. *Farmer*, 511 U.S. at 828. Although prison officials have a duty to protect inmates from violence at the hands of other inmates, not every injury resulting from violence between inmates results in constitutional liability. *Id*. at 833–34. An inmate asserting an Eighth Amendment claim must demonstrate: (1) that the harm was "sufficiently serious" under an objective standard; and (2) that the prison officials had "subjective knowledge of the risk of harm" but did nothing to prevent such harm. *Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008).

First, to satisfy the objective component of the standard, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. A prison official's "act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Next, to satisfy the subjective component of the standard, the inmate must show both that the prison official was "aware of facts from which the inference could be drawn that a substantial risk of harm exists" and that the prison official did in fact "draw the inference." *Id.* at 837. "[D]eliberate indifference entails something more than mere negligence" but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Defendants concede, as they must, that a serious risk of sexual assault is sufficient to satisfy the objective prong. *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) ("There is no question that sexual assault of the kind suffered by Ms. Tafoya meets this objective component of an Eighth Amendment claim."); *Howard*, 534 F.3d at 1237 ("Of course the harm of sexual assault is 'serious' enough to have Eighth Amendment implications."); *Giron v. Corr. Corp. of Am.*, 14 F. Supp. 2d 1252, 1255 (D.N.M.1998), ("Plaintiff's deprivations resulting from this [sexual] assault are sufficiently serious to satisfy the first prong of this analysis and to constitute a violation under the Eighth Amendment.") *aff'd*, 191 F.3d 1281 (10th Cir.1999) . Additionally, the Tenth Circuit has affirmed the objective component may be met where officials fail to make a situation safer, including refusing to "separate the prisoner from other inmates who previously have attacked him." *Grimsley v. MacKay*, 93 F.3d 676, 681 (10th Cir. 1996).

Considering only the operative complaint, the Court is not altogether convinced that Mr. Cruz's allegations demonstrate that he was sexually assaulted. By his own words, Mr. Cruz *deduced* he was the victim of sexual assault while unconscious or sleepwalking because on different occasions his "spirit hurt," his anus "felt different," he discovered what appeared to be fecal stains in his pants, and fellow inmates used homophobic slurs towards him. The Court questions whether these facts result in a well-pled allegation that an assault occurred. However, Mr. Cruz also claims that his cell mate Andrew Baca admitted committing one of the assaults. Because Mr. Cruz

proceeds pro se, the Court construes the pleadings liberally and will assume that he has plausibly alleged that a sexual assault occurred.[5]

However, even if Mr. Cruz has satisfied the objective prong, "[t]he objective seriousness of a sexual assault does not necessarily translate into automatic constitutional liability." *Darris v. Annie*, No. 12-cv-00278-REB-CBS, 2013 WL 980182, at *3 (D. Colo. Feb. 24, 2013), *report and recommendation adopted*, 2013 WL 979085 (D. Colo. Mar. 13, 2013). The plaintiff must still show that the prison official was deliberately indifferent to (i.e., knew of but disregarded) the excessive risk of harm. *Id.* "An official is not liable if he or she merely 'should have known' of a risk. *Id.* (citing *Giron*, 14 F. Supp. 2d at 1255–56). "An official also is not liable if he or she responds reasonably to the risk." *Id.* (citing *Tafoya*, 516 F.3d at 916).

Here, Mr. Cruz does not adequately plead that the Detectives disregarded the risk of sexual assault or acted unreasonably. In fact, when Mr. Cruz reported the sexual assaults, he was placed on a mental health watch, which removed him from the environment of the alleged sexual assaults. After completing the mental health watch, he was returned to the general population and housed with different cell mates. Mr. Cruz also received two SANE exams, but does not allege their results. The Detectives could not have known that subsequent cellmates, with whom Mr. Cruz had never been housed, would assault Mr. Cruz in his sleep. To hold otherwise requires too great an inferential leap. Courts have

> refused to stretch liability far enough to cover a prison official who disregards a risk that one particular fellow inmate will assault a prisoner,

---

[5] Because the Court considers the objective prong satisfied, it is irrelevant whether Mr. Cruz actually remembers being sexually assaulted by Mr. Baca, an allegation that was not contained in the operative complaint. (*See* Dkt. #40.)

> only to have an entirely different and apparently-unforseen [*sic*] perpetrator do so, *Staley v. Owens,* 367 Fed. Appx. 102 (11th Cir. 2010) ("Although an inmate does not necessarily have to identify the particular source of risk, in this case, there is no evidence that Staley's fear of reprisal at the hands of Haywood based on a specific incident between them alerted [the defendant] to a substantial risk of harm to Staley from Brown, or any other inmate"), or an official who created an abstract risk of assault generally. *Decker v. Dunbar,* 633 F. Supp. 2d 317, 356 (E.D. Tx. 2008) (no liability where officer transported plaintiff to the law library with prisoners in administrative segregation, thus giving fellow inmates the impression that plaintiff was homosexual (or at least otherwise subject to special protection), only to have plaintiff thereafter assaulted by fellow inmate).

*Street v. Simon*, No. 10-cv-02026-MSK-MJW, 2012 WL 1078910, at *3 (D. Colo. Mar. 30, 2012). Accordingly, Mr. Cruz's Eighth Amendment claim premised on failure to protect fails.

### c. Deliberate Indifference to a Serious Medical Need

The Court briefly addresses what it perceives as Mr. Cruz's allegations of deliberate indifference to a serious medical need.

To the extent Mr. Cruz asserts a deliberate indifference claim against the Detectives, such claim fails. Prison guards can be liable for deliberate indifference to a serious medical need when "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–105. Here, Mr. Cruz complains that his sleepwalking has not been properly diagnosed and that he has not received therapy after reporting the sexual assaults. The Detectives are not responsible for providing this kind of care. Instead, at most, the Detectives are gatekeepers that facilitate access to medical services. The Detectives in this case did not delay or deny Mr. Cruz's medical care. Instead, by Mr. Cruz's own allegations, he was repeatedly taken for mental health evaluations and stayed in the medical housing unit while being treated for suicidal ideation. Nor can the Court find that Detective

McKenzie's failure to order a SANE exam after the first reported sexual assault amounts to deliberate indifference. Indeed, Detective McKenzie was presented only with Mr. Cruz's "deductive reasonings" that he had been assaulted. There are no allegations that Mr. Cruz told Detective McKenzie that he had a serious medical need (such as an injury resulting from the sexual assault) or that Mr. Cruz suffered some injury as a result of not receiving a SANE exam. Instead, he complains that Detective McKenzie's failure to request a SANE exam prevented Mr. Cruz from collecting evidence of the sexual assault. Without more, these allegations do not support an Eighth Amendment claim.

Further, Mr. Cruz appears to bring claims against the mental health service provider that with whom ACDF contracts. (*See* Dkt. #20 at 12, explaining that he believes ACDF employs a "separate business entity" to provide mental health services at the prison.) As previously noted (*see supra* n.1), Mr. Cruz has not adequately named or served any mental health or other medical service providers in his complaint. Thus, to the extent he asserts an Eighth Amendment claim against such medical professionals, the claim must be dismissed.

### d. Qualified Immunity

Because Mr. Cruz has not plausibly alleged that the Detectives violated a constitutional right, the Detectives are entitled to qualified immunity. The claims against them in their individual capacities should be dismissed.

### III. Mr. Cruz Fails to State a Claim for Municipal Liability

### a. The ACDF is Not a Legal Entity Subject to Suit

Defendants next argue that the ACDF if not an entity subject to suit under Colorado law, and not a "person" within the meaning of § 1983. They are correct. *Aston*

*v. Cunningham*, 216 F.3d 1086, n.3 (10th Cir. 2000) (Table) ("a detention facility is not a person or legally created entity capable of being sued"); *see also Cordova v. Pesterfield*, No. 15-CV-00135-GPG, 2015 WL 855805, at *3 (D. Colo. Feb. 26, 2015) (citing *Stump v. Gates*, 777 F. Supp. 808, 814–16 (D. Colo. 1991) ("Adams County Detention Facility is not an entity separate from Adams County, Colorado, and, therefore is not a person subject to suit under § 1983."), *aff'd*, 986 F.2d 1429 (10th Cir. 1993)). Mr. Cruz's claims against the ACDF should, therefore, be dismissed.

### b. Mr. Cruz Fails to State a Claim against the Adams County Sheriff's Department

The claims in this case arise from the actions of sheriff's deputies (the Detectives) and out of the operation of the ACDF. Therefore, the proper defendant for Mr. Cruz's municipal liability claims is the Adams County Sheriff's Department or the Adams County Sheriff in his official capacity.[6] *See* Colo. Rev. Stat. §§ 17-26-101 & 102; 30-10-506.

However, even if Mr. Cruz had named the proper entity, he has failed to state a municipal liability claim. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) (footnote omitted). When evaluating a *Monell* claim, the Court must consider: "(1) whether plaintiff's harm was

---

[6] "[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Stuart v. Jackson*, 24 F. App'x. 943, 956 (10th Cir. 2001) (quoting *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998)).

caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Crowson v. Washington Cnty., Utah*, 983 F.3d 1166, 1186 (10th Cir. 2020) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)), *cert. denied sub nom. Washington Cnty. v. Crowson*, 142 S. Ct. 224 (2021). "The absence of an affirmative answer to either of these questions is fatal to a claim against the municipality." *Id*. Thus, "with respect to the first question, a claim under § 1983 against . . . a municipality cannot survive a determination that there has been no constitutional violation." *Id*.

As previously explained, Mr. Cruz has failed to plausibly allege that the Detectives or any other Adams County Sheriff's Department employee violated his constitutional rights. Without the predicate constitutional violation, there can be no *Monell* claim against the Adams County Sheriff's Department for failure to train or failure to discipline. *Myers,* 151 F.3d at 1317 (stating that "failure[-]to[-]train claims . . . require[ ] a predicate showing that the officers did in fact" violate the decedent's rights); *Trigalet v. City of Tulsa, Okla.*, 239 F.3d 1150, 1156 (10th Cir. 2001) (holding that "absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability imposed").

Even if Mr. Cruz had plausibly alleged that the Detectives violated the Eighth Amendment, he has failed to allege that any policy was the moving force behind the violation. In fact, he alleges that his rights were violated because Defendants *did not* follow ACDF regulations. Thus, he implicitly "acknowledges that the polices that were in place were not the 'moving force' behind the alleged constitutional deprivation, but rather a 'force' that he alleges failed to stop the harm." *Sanchez v. Bauer*, No. 14-cv-

02804-MSK-KLM, 2015 WL 5026195, at *7 (D. Colo. Aug. 26, 2015). Accordingly, he

fails to state a claim for municipal liability regardless of which entity he named. *See*

*Meek v. Crews*, No. 13-cv-01064-MSK-KLM, 2014 WL 1056581, at *4 (D. Colo. Mar. 19,

2014) (dismissing an official capacity claim because the plaintiff failed to identify a

municipal policy or custom that caused the plaintiff's injury); *Dalcour v. City of*

*Lakewood*, No. 08-cv-00747-MSK-KLM, 2009 WL 3162235, at *3 (D. Colo. Sept. 30,

2009) (dismissing official capacity claims against a city official because the plaintiff

failed to allege that the official's conduct was the result of a municipal policy or custom).

### IV. Mr. Cruz Fails to State a Claim for Supervisory Liability

Mr. Cruz names unidentified "Supervisors of Both Detectives" as parties in this

lawsuit. To the extent he asserts a claim against the unnamed supervisors in their

individual capacities, such claim must fail. Mr. Cruz's single allegation that unidentified

supervisors failed to supervise the Detectives and "allow[ed] sexual assaults to go

unhindered 3 seperate [sic] times" is purely conclusory. Personal participation is an

essential element of a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63

(10th Cir. 1976); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an

affirmative link between the alleged constitutional violation and each defendant's

participation, control or direction, or failure to supervise. *See Butler v. City of Norman*,

992 F.2d 1053, 1055 (10th Cir. 1993). A supervisor can only be held liable for his own

deliberate intentional acts. *See Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th

Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement

in the violation of a person's constitutional rights."). Three elements required to establish

a successful § 1983 claim against a defendant based on his or her supervisory

responsibilities: (1) personal involvement; (2) causation, and (3) state of mind.

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

Here, there are no specific facts regarding the purported supervisory deficiencies, the personal participation of the supervisor(s), or how inadequate supervision caused Mr. Cruz's alleged injuries. Moreover, there is no predicate constitutional violation. Thus, claims against the unidentified supervisors should be dismissed.

### V. Mr. Cruz Fails to State any Tort Claims

The Court notes that Mr. Cruz makes several references to state law torts including assault, negligence, defamation, and intentional infliction of emotional distress. Each of these claims fails.

To state a claim for assault, a plaintiff must allege

(1) the defendant acted either with the intent of making a contact with the person of the plaintiff or with the intent of putting the plaintiff in apprehension of such a contact; (2) the plaintiff was placed in apprehension of an imminent contact with his or her person by the conduct of the defendant; and (3) such contact was or appeared to be harmful or offensive.

*Adams v. Corr. Corp. of Am.*, 187 P.3d 1190, 1198 (Colo. App. 2008). Mr. Cruz's operative complaint does not allege any such conduct by Defendants, so the assault claim should be dismissed.

Mr. Cruz's negligence claim also fails.

To establish a claim based on negligence, the plaintiff must show: (1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) that the breach of the duty caused the harm resulting in damages to the plaintiff. *Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo.2002) (citing *Greenberg v. Perkins*, 845 P.2d 530, 533 (Colo. 1993)); *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992). A negligence claim fails where the law does not impose a duty on the defendant to act for the plaintiff's benefit. *Ryder*, 54 P.3d at 889 (citing *Greenberg*, 845 P.2d at

> 533, and *Perreira v. Colorado*, 768 P.2d 1198, 1208 (Colo. 1989)). Whether a defendant in a particular negligence action owes a legal duty to the plaintiff is not a question of fact but is a question of law to be determined by the court. *Bath Excavating & Constr. Co. v. Wills*, 847 P.2d 1141, 1147 (Colo. 1993). After the court determines the existence of a legal duty, then the finder of fact is to determine whether the defendant breached that duty. *Perreira*, 768 P.2d at 1208.

*Keller v. Koca*, 111 P.3d 445, 447–48 (Colo. 2005), *as modified on denial of reh'g* (May 16, 2005). As previously set forth, there is no duty to conduct an investigation in a manner satisfactory to a plaintiff. Without a predicate legal duty, Mr. Cruz's negligence claim necessarily fails. Further, to the extent Mr. Cruz attempted to assert a claim for medical negligence against the mental health providers, he failed to name those providers as party defendants.

To state a claim for defamation, a plaintiff must plausibly allege: "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *Greenwood Trust Co. v. Conley*, 938 P.2d 1141, 1153 n.1 (Colo. 1997). Mr. Cruz has not alleged that any Defendant made a defamatory statement, so this claim should be dismissed.

With respect to Mr. Cruz's intentional infliction of emotional distress claim, Colorado law provides: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970) (adopting definition providing in Restatement (Second) of Torts § 46 (1965)). "Although the question whether conduct is

outrageous is generally one of fact to be determined by a jury, it is the initial responsibility of a court to determine whether reasonable persons could differ on the question ." *McCarty v. Kaiser–Hill Co., L.L.C.,* 15 P.3d 1122, 1126 (Colo. App. 2000), *cert. denied* (Jan. 2001). "The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high." *Id*.; *see also Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) ("Liability [for outrageous conduct] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.").

Mr. Cruz has not alleged facts showing that Defendants conduct was so outrageous as to go beyond all possible bounds of decency. Even if the Court found Defendants should have done more to investigate the alleged sexual assaults, the Court does not find that these allegations meet the exacting standard required to state a claim for intentional infliction of emotional distress. *See Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 991 (Colo. App. 2011) (inpatient rehabilitation facility's employees "were abrupt, irresponsible, and lacking in sensitivity" when responding to a wife's concerns about her inpatient husband's dangerously low blood pressure, and one employee even falsified an entry on the husband's chart to show normal blood pressure, but none of the employees could be liable for intentional infliction of emotional distress).

Thus, each of Mr. Cruz's state law tort claims should be dismissed for failure to state a claim.

Alternatively, the Court may decline to exercise jurisdiction over the state law claim. While courts may exercise supplemental jurisdiction over state law claims if there

is otherwise a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) states that a court

may decline to exercise jurisdiction over such claims if "the district court has dismissed

all claims over which it has original jurisdiction." When § 1367(c)(3) is implicated in the

Tenth Circuit, courts are advised to dismiss pendent state law claims "absent

compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir.

2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)) (reversing the district

court's grant of summary judgment on state law claims); *Endris v. Sheridan Cnty. Police

Dep't*, 415 F. App'x 34, 36 (10th Cir. 2011) ("any state-law claims for assault and battery

or mental and emotional injury were inappropriate subjects for the exercise of pendent

jurisdiction where all federal claims had been dismissed"). The Court does not believe

there would be any compelling reasons to retain jurisdiction over Mr. Cruz's state law

claims, even had they been plausibly alleged.

**CONCLUSION**

In light of the foregoing, it is hereby **RECOMMENDED** that the Adams County

Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. #38) be

**GRANTED** and the case be **DISMISSED** without prejudice.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2),
the parties have fourteen (14) days after service of this recommendation to serve
and file specific written objections to the above recommendation with the District
Judge assigned to the case. A party may respond to another party's objections
within fourteen (14) days after being served with a copy. The District Judge need
not consider frivolous, conclusive, or general objections. A party's failure to file
and serve such written, specific objections waives de novo review of the**

recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53

(1985), and also waives appellate review of both factual and legal questions.

*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*,

91 F.3d 1411, 1412–13 (10th Cir. 1996).

Date: July 12, 2022

                                          _____

                                          N. Reid Neureiter
                                          United States Magistrate Judge